of the legislature to distinguish between a special election and an annual one.

Indeed, the insertion of this language preserving the right of the party holding the certificate, in case the town votes against licensing, rather corroborates the theory of the instantaneous force of the law. The provision is not, that notwithstanding the vote against license the power to issue certificates shall remain until the expiration of any license granted; it solely excludes the idea of granting any more licenses except the one in operation, and which has been paid for, until a period in the future.

The action of the county treasurer, therefore, must be reversed, with costs.

Ordered accordingly.

---

Supreme Court, St. Lawrence Special Term, June 1896. Unreported.

PEOPLE ex rel. ORLO C. RICHARDSON *v.* M. R. SACKETT, as County Treasurer.

RUSSELL, J. The relator seeks to review the refusal of the county treasurer to issue to him a liquor tax certificate for use in a hotel in the town of Russell. This town was one in which no licenses were granted by the former commissioners and the applicant seeks to justify his request under the present law through the vote of a special town meeting, called for that purpose, at which a majority of the ballots were cast in favor of issuing certificates to hotels. One objection made to the application by the county treasurer is that the special town meeting was not properly called and held. It is conceded that this special town meeting was called for two o'clock in the after-noon, and the balloting then proceeded which resulted favorably to the granting of such application. The direction of the statutes for holding of town meetings at which ballots are cast requires the polls to be opened at sunrise and continue open till sunset. The design of this provision is to afford electors substantially the whole of the day to deposit their ballots, so that a full expression of the will of the electors may be conveniently had. There is a wide difference between the power of an annual town meeting and that of a special town meeting, the latter being called under the authority of the statute for special purposes, while the annual

town meeting is the assemblage of the constituent members of the municipal corporation, clothed with general power and authority to transact business for the town, except as limited by law. At annual town meetings the electors have power to determine where a meeting shall be held and any departure from regularity does not vitiate the action unless so radical in its character as to be of fundamental variance from the object or design of such meetings.

In special town meetings, however, the electors act within narrow limits and must proceed without any substantial departure from the form prescribed where those forms are designed to assure a full vote and opportunity of expression. To narrow the privilege of voting, in the very inception of the steps necessary to call the meeting into existence, to a limit of three or four hours, where the design was to give substantially the whole of the light of day to the electors in going to the place, voting and returning home, in a rural township, is such a substantial departure from the statutory authority and its object that I regard such a meeting as ineffective to adopt a radical change in the policy of the town.

Nor does it seem as though it was within the province of an executor of a will to obtain a license to sell liquors and carry on the business of a hotel. Assuming that this executor had the power to lease to another who could, or that he had the lawful right of possession so as to enable him personally to carry on the hotel business and sell liquors with entire freedom from penalty and under the protection of the law he should have applied as a person and not as an executor acting in a trust capacity, as it is the design of the law to make the proper conduct of the business a personal liability and as the executor should not have the power to involve the estate as a trustee in the liabilities for the conduct of the business.

It was the duty of the county treasurer, although acting in a ministerial capacity, to see that the proper steps were taken which justified him in issuing the tax certificate and that the papers upon the application presented the case of a person included in those who by law have the right to apply for a certificate.

The determination of the county treasurer is, therefore, affirmed with costs.